Yazoo & M. V. R. Co. *v.* Jones.

[75 South. 550, In Banc.]

1. RAILROADS. *Private spur tracks. Execution of contract. Sufficiency of evidence.*

Under the facts in this case as set out in its opinion the court held that the plaintiff and the railroad company never completely executed any contract for the installation of a spur track to plaintiff's gin.

2. RAILROADS. *Private spur track. Acceptance of contract. Evidence.*

Where plaintiff altered and returned a contract sent him by a railway company for the construction of a spur track, the fact that the railway company retained this contract and cashed plaintiff's check sent in expectation of the execution of the contract, did not constitute an acceptance of the altered contract, where

the company submitted a new contract to plaintiff in lieu of the one sent by him to it.

3. CONTRACTS. *Meeting of minds. Necessity for.*
    Where there is no estoppel, the minds of the contracting parties to a contract must meet as to all the terms and conditions of the contract.

APPEAL from the circuit court of Tallahatchie county. HON. E. D. DINKINS, Judge.

Suit by S. M. Jones against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*James Stone & Son, C. N. Burch* and *H. D. Minor,* for appellant.

Laws of Mississippi 1908, chapter 88, providing for the building of spur tracks by railroad companies so as to connect their main line with manufacturing or other industrial plants, and for the maintenance of same when constructed, is unconstitutional. *McInnis* v. *Railroad,* 68 So. 481.

A contract is a meeting of the minds of two or more persons, based upon some valid consideration, to do or not to do some lawful act. The parties must be competent persons and must communicate one to another their common intention. Every agreement must necessarily result from an offer or proposal on one side and an acceptance on the other. An offer and an acceptance must be absolute and unconditional and the offer or proposal must be accepted exactly as it is made. If the offer made is rejected or modified in the least, the party making it is relieved from liability on that offer and the party who has rejected cannot afterwards at his option, convert the same offer into an agreement by an acceptance. To do so he must have the renewed consent of the person who made the offer. *Davis* v. *Parish,* 12 Am. Dec. 287; Lawson on Contracts, 27; *Insurance Co.* v. *McIntosh,* 86 Miss. 236.

The paragraph objected to by appellee in the contract sent him by appellant was reasonable and the appellant had a right to insist upon the contract beinng signed just as it sent it, or else appellant was under no liability. *Imperial Wheel Co.* v. *Railroad,* 20 I. C. C. Rep. *Mayfield* v. *Railroad,* 85 S. C. Rep. 165; *Missouri, etc., R. Co.* v. *Carter,* 68 S. W. 159; *Mann* v. *Railroad,* 135 Mich. 210; *Richmond* v. *Railroad,* 26 R. I. 225; *Railroad* v. *Saulsbury,* 5 Ann. Cas. 74; *Griswold* v. *Railroad,* 24 L. R. A. 751; *Porter* v. *Railroad,* 205 Mass. 590; *Hartford Ins. Co.* v. *Railroad,* 175 U. S. 91; *Russell* v. *Railroad,* 55 L. R. A. 253; *Quimby* v. *Railroad,* 5 L. R. A. 846; *Slocumb* v. *Railroad,* 81 S. E. 335.

The legislature alone can impose upon railroads the duty to construct side tracks. In Mississippi, the statute imposing that duty has been held unconstitutional, therefore there is no law compelling appellant to put in a spur track and appellant had no right to construct or refuse to construct a particular spur track on such terms as appellant desired to impose. *Railroad* v. *M. R. C.,* 150 N. W. 158; *Mann* v. *Railroad,* 97 N. W. 724, and numerous authorities there cited.

Other citations that fill various law books as to a contract being based upon a meeting of the minds as to all the terms and conditions and specifications contained therein, are here cited. Especially where "mutuality" is essential. *L. P. Lumber Co.* v. *Hinton,* 108 Pac. 528; *Luckey* v. *Railroad,* 113 S. W. 703; *Miller* v. *Sharp,* 100 N. E. 108; *McNeill* v. *Railroad,* 47 S. E. 765; *Phelps* v. *Good,* 96 Pac. 216; *Embry* v. *Dry Goods Co.,* 105 S. W. 777; *Am. Pencil Co.* v. *Railroad,* 32 L. R. A. (N. S.) 32; *Case Mac. Co.* v. *Meyers,* 9 L. R. A. (N. S.) 970; *W. J. O Con. Co.* v. *Reeder,* 66 S. E. 955; *Am. Can Co.* v. *Agr. Ins. Co.,* 106 Pac. 720; *H. C. C. O. & G. Co.* v. *Nichols,* 89 S. W. 795; *San Antonio* v. *Marx,* 87 S. W. 1166; *Baird Bros.* v. *W. P. & Co.,* 89 S. W. 648; *H. & B. Car Co.* v. *A. F. Co.,* 91 N .E. 975, *M. W. & Co.* v. *Johnson,* 95 N. E. 290.

*A. H. Stephens, Green & Green* and *A. A. Hearst,* for appellee.

Under these undisputed facts, the appellant was bound by the contract as signed by appellee, and under which it received and retained the money, seven hundred and twelve dollars and thirty-one cents, even though it did not intend to agree to all of the conditions of the contract as signed by appellee.

When appellant tendered to appellee, for signature, the proposed contract between the parties in May, 1914, and appellee refused to sign it, as drafted, but altered it and signed it and acknowledged it, and with it paid appellant seven hundred and twelve dollars and thirty-one cents for the switch and track, according to its terms, and appellant cashed this check and retained the money, and also retained the signed contract, and never offered to return the contract signed, nor the money, there was a meeting of their minds on this contract by the acceptance by appellant of appellee's offer in the modified contract and the acceptance of the money paid in pursuance of its terms.

Assent to the terms of the contract is shown by acting upon the offer. Appellant could not keep the money paid in execution and performance of the contract, and which was paid as a consideration of the performance of the contract as signed by appellee. The acceptance of the money bound appellant to perform the contract for the consideration of which it was paid, and appellant could not keep the money and claim any terms or conditions other than those set forth in the contract upon which the money was paid. *Burton* v. *Wells,* 30 Miss. 688, is directly in point. *Grinnan* v. *Platt,* 31 Barb. 328; *Springer* v. *Cooper,* 11 Ill. App. 267; *Orme* v. *Cooper,* 1 Ind. App. 449; *Seal* v. *Irwin,* 2 Martin (N. S.) (La.) 245; *Amory* v. *Black,* 13 La. 264; *Springfield* v. *Harris,* 107 Mass. 330; *Manger* v. *Crosby,* 117 Mass. 330; *New York and New Haven R. R. Co.* v. *Pixler,* 19 Barb. 428; *Walters*

v. *Glendenning,* 87 Wis. 250; *Johnson* v. *Tally,* 10 Lea 248; *Aiken* v. *Albany R. R. Co.,* 26 Barb. 289; *Baldwin* v. *Commonwealth,* 74 Ky. 11, Bush, 417; *Robertson* v. *Tapley,* 47 Mo. App. 239.

Performing acts in accordance with a proposition as offered will complete the contract, and impose upon the party so doing the necessary obligation without calling for a signature from him. Both parties need not sign. And such performance will make the promise obligatory upon the promisor. *Matthewson* v. *Fitch,* 22 Cal. 86; *Hoffman* v. *Railroad Co.;* 157 Pa. St. 174; *Perkins* v. *Halsell,* 50 Ill. 216; *McMillan* v. *Railroad Co.,* 92 Am. Dec. 208; *Moss* v. *Bellows,* 28 Am. Dec. 372; *Attix* v. *Pelan,* 5 Ia. 336; *Brandon Mfg. Co.* v. *Moss.* 38 Vt. 322; *Hooker* v. *Hyde,* 61 Wis. 604.

These authorities abundantly support the proposition that appellant, after it received the altered contract signed by Jones, of May 25, 1914, and cashed the check with the endorsement: "For switch and track at S. M. Jones' saw mill" and received the money thereon, could not, while retaining that money from May 25, 1914, to September, 1915, one year and four months, and never offering to return it until sued, set up that there were any other terms to the contract than those stated in that signed by Jones, and if there were any other conditions or conjunctions incompatible with the terms of acceptance of this money, even though, as held in *Burton* v. *Wells, supra,* appellant dissented from such conditions, the money having been received upon such conditions, appellant would be bound.

Too much stress cannot be laid upon the fact that appellant received this check with this contract for the performance of the terms of that contract by it, and not only this, but actually endorsed the check "For switch and track at S. M. Jones' saw mill," showing that it was received and collected for this particular purpose and none other.

Thus having received the money for this purpose, and collected the money for this purpose, appellant could not say that it was not bound by the terms of the contract under which it had received this money.

Sykes, J., delivered the opinion of the court.

S. M. Jones instituted suit in the circuit court of the second judicial district of Tallahatchie county against the Yazoo & Mississippi Valley Railroad Company, and recovered a judgment in said court for the sum of seven thousand, five hundred and sixty-seven dollars and seventy-one cents from which judgment this appeal is prosecuted.

The appellee, Jones, claims that he and the railroad company entered into a written agreement or contract some time after the 22d day of April, 1914, under which contract the railroad company obligated itself to build a switch or spur track for the use and benefit of the appellee on his plantation at a point called Black Bayou Junction; that on or about May 24, 1914, he paid to the railroad company the sum of seven hundred and twelve dollars and thirty-one cents, the amount demanded by the company to be advanced to defray the estimated expense for building the spur track. The appellee claims that the railroad company breached or declined to execute this contract by building the spur track, thereby causing his damages. The railroad company contends that it never entered into any such contract with the appellee, and that under the testimony appellee was entitled only to a verdict and judgment for the amount he advanced as a partial payment for the work of building the spur track.

The facts material to the controversy are not controverted and are set out in the correspondence which passed between the railroad company and Mr. Jones, supplimented by some testimony relating to the return-

ing of the alleged contract by Mr. Jones and the sending
of his check to the railroad company.

The material facts, as shown by this correspondence
and this testimony, are as follows: In January, 1914,
Mr. Jones began the correspondence by writing to the
superintendent of the railroad company at Memphis,
Tenn., a letter asking him to put in a switch track at
his sawmill. In this letter he asks that the superin-
tendent take up this matter right away, as he desires
to get this spur in as soon as possible. The superintend-
ent acknowledged receipt of this letter a few days
thereafter, and stated that he would have one of the
engineers of the defendant call on the appellee as soon
as possible, with reference to the location of the track.
The appellee promptly replied to this letter and asked
the superintendent to have the engineer come as soon
as possible as he wanted to start work on the spur track,
and that he knew that it usually took some months to get a
spur. The appellee again wrote the superintendent
about four weeks later, asking when they would begin
work on the switch track; to which letter the superintend-
ent replied that blueprints had been made and submitted
to the management for this spur track. About two weeks
later, the superintendent again wrote appellee, in reply
to a letter which is not set out in the record, stating that
he was requesting the general superintendent to rush
the matter of the spur track. About three weeks later,
appellee again wrote the superintendent, stating that
he was ready to begin building the dump and sawing the
ties, and was in need of the spur track, and asked that
prompt attention be given to the matter. This letter
was replied to by the superintendent less than a week
after it was written. We will now, beginning with this
letter, set out in full the correspondence between the
superintendent of the railroad company and the appellee:

SJP—20021—52

Memphis, May 7, 1914.

Mr. S. M. Jones, Glendora, Miss.—Dear sir: Referring to previous correspondence in regard to your application for spur track at Black Bayou, Miss.

Am now in receipt of advice that your track has been authorized and we are to-day instructing Road Master J. L. Downs to arrange to stake out track at once in order that you may commence grading, etc.

We will send you agreements within the next few days and as soon as the same have been executed on your part we will arrange to construct the track for you.

Yours truly,                              Superintendent.

SJP—20051—52

Memphis, June 20, 1914.

Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Referring to your application for spur track to serve gin at Black Bayou.

Wish to advise that revised contract, which we hope will meet with your approval, has been drafted, and will reach you within the next few days.

Yours truly,                              Superintendent.

Cy Mr. J. L. Downs.

Glendora, Miss., June 24, 1914.

Mr. B. A. Porter, Supt. Y. & M. V. R. R. Co., Memphis, Tenn.—Dear Sir: I write you again in regard to the contract of my spur, will be glad you will attend to this at once and send same to me for my signature so that there wont be any further delay in installing the spur as I need it at once and if you are not going to do anything in regard to this matter please notify me so I can take it up with the Southern R. R. Co.

Very truly,                              S. M. Jones.

C

                                    Memphis, June 25, 1914.
                    SJP—20021—52
   Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Referring to recent correspondence in regard to contract covering construction of spur tack for your accommodation at Black Bayou, Miss., you taking exception to paragraph No. 4 of the contract sent you.

   I have now had the contract revised, and same is inclosed herewith, which I hope will meet with your approval.

   Will you kindly have same executed, and returned, at the earliest possible date.
   Yours truly,                        Superintendent.
   CC—Mr. J. L. Downs.

                                    Memphis, June 26, 1914.
                    ROF
   Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Replying to your favor June 24th in regard to side track.

   Will advise that agreement was sent in care of the agent yesterday. We trust this agreement in its present form will be satisfactory to you and just as soon as it is executed and provisions complied with, we will start construction of the track.
         Yours truly, B. A. Porter, Superintendent.
   Cy Mr. W. D. Coggins, Glendora.

   Mr. J. L. Downs.
                                    Glendora, 6—28—1914.
   Mr. B. A. Porter, Memphis, Tenn.—Dear Sir: I received your contracts but did not see where paragraph No. 4 was changed, also I want the latter part of paragraph No. 3 changed showing that the spur will have to remain for one year and I am to have ninety days notice instead of thirty days. I think this right and just as I am paying for the track. I do not want to hurry you in this matter but if we cannot get this matter fixed up so the spur can be put in by 1st of Sept., I will not want it.

These contracts are exactly like the original if the R.
R. Co. does not want to do the fair and just thing in this
matter, I am willing to call same off and you can return
my CK.

These contracts are exactly like the original ones and
I will not accept them.

If the R. R. Co. sets fire to anything of mine I will
certainly expect pay for same.

Yours truly,                           S. M. Jones.

Memphis, June 30, 1914.
ROF 20021—52

Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Reply-
ing to your letter June 28th and again handing you
agreement proposed side track for your account at
Black Bayou.

With reference to article 3—I would see no objection
this article, for the reason the Railroad Co. could not
remove the track after once constructed unless with per-
mission from the Mississippi Railroad Commission.

With reference to article 4—You will note inserted
article 11, takes care of that objection.

If all the provisions of the agreement are not now
clear to you, would suggest you hold the papers and let
me know. If necessary, I will stop off at Glendora
within the next few days and talk the matter over with
you.

Your truly,                           B. A. Porter.
Cy Mr. J. L. Downs, Superintendent.


20051—52
Glendora, Miss., Aug. 24, 1914.

Mr. B. A. Porter, Memphis, Tenn.—Dear Sir: I
wrote to ask you have your trains cut for the crossing
at Black Bayou, Miss., as it is a public road and it is
very annoying to have to wait for fifteen to thirty
minutes to get by. This happen to me and my wife twice
last week, your trainmen pays no attention whatever to
public crossings in this section and it is very annoying,

this is the second time I have made complaint to you about this matter and I will certainly appreciate if you will have more courtesy extended to the public and all of us in this section, also I am ready for my spur as I have paid for it also I have my gin ready to run and have some coal bought that I want to get in as I am ready to go to ginning in about two weeks and would like for you to send an engineer to show me about the grading so I can get the spur in right away and I think it is your duty to have it put in at once for you have had the money for over sixty days for same.

Please attend to these two matters at once as I want to get both things accomplished as early as possible.

Yours truly,                                          S. M. Jones.

BAP

Memphis, August 25, 1914.

Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Acknowledging receipt of your letter of August 24th.

I regret our employees have inconvenienced you by keeping crossing at Black Bayou blocked. We have put up instructions after instructions on this subject, and, of course, you know there is a law which covers it. You have handled men long enough to know that to continue to put up instructions in a general way does not accomplish the desired end.

I would be glad for you to drop me a note at any time, giving me the engine number of any train that may block one of these crossings beyond the legal period.

I will handle in such manner that the employee will not be made to suffer severely, and at the same time will never know where the information came from.

This system of course you know will have the desired effect.

I have again taken up with the roadmaster the track proposition insisting that he send an engineer right away to give you the information you desire.

Yours truly, B. A. Porter, Superintendent.

BAP—20021—52

Memphis, September 8, 1914.

Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Our conversation this morning with reference to track to serve your gin.

I find we wrote you last on June 30th in regard to this matter, and I quote below the letter referred to:

"Replying to your letter June 28th and again handing you agreement covering proposed side track for your account at Black Bayou.

"With reference to article 3—I would see no objection to this article, for the reason that the Railroad Company could not remove the track after once constructed, unless permission from the Mississippi Railroad Commissions.

"With reference to article 4—You will note inserted article 11, takes care of that objection.

"If all the provisions of the agreements are not now clear to you, would suggest you hold the papers and let me know. If necessary I will stop off at Glendora, within the next few days and talk the matter over with you."

Of, course, we are not in position to go ahead with the work until the agreement is signed up.

You will note I said in my letter of June 30th that if this matter is not satisfactory I would stop off at Glendora and see you with reference thereto.

Yours truly, B. S. Porter, Superintendent.

BAP—20021—52

Memphis, October 14, 1914.

Mr. S. M. Jones, Glendora, Miss.—Dear Sir: Referring to our conversation train 304 at Black Bayou, October 13th.

I have carefully looked over my files in regard to track proposition.

My records show that on June 25th we mailed to you at Glendora a revised contract and ask that same be executed and returned at earliest possible date.

We received a letter from you on June 26th, dated 24th on this subject, and on June 26th we again wrote you referring to our letter of June 25th, and advised that the revised contract had been sent you on the 25th; you wrote us on June 28th, advising that you had received contract, and took exception to certain paragraphs thereof.

We wrote you again in regard to this matter on June 30th and endeavored to explain the paragraphs to which you objected.

You wrote me August 24th, in connection with crossing at Black Bayou being blocked and again referred to the track proposition.

We wrote you August 25th, in regard to this matter, and again on September 8th. We can find no record whatever of having received from you the revised contract, which was sent with my letter of June 30th.

We cannot begin the construction of this track until we have in our possession, with your signature, the contract referred to.

I am anxious to make every concession possible to secure for our company your business, and to retain your good will, which we consider valuable.

Can you say what was done with the contract which was sent you June 30th.

Yours truly, B. A. Porter, Superintendent.

It will be noted that the letter of the superintendent to Mr. Jones, dated May 7, 1914, informed appellee that this track had been authorized, and that the roadmaster was being instructed to stake the same out, in order that Jones might commence the grading. It further informed Jones that the agreements would be sent to him within the next few days, and that as soon as Jones had executed these agreements the railroad would arrange to construct the track. This letter was written before the conditions of the contract had been discussed in any manner between the appellant and the appellee. The previous correspondence between them only related to making of

the contract. Neither party was bound to enter into a contract with the other for the building of this spur track. By the above letter the appellee was told that the railroad company would construct this track when these agreements had been executed by him. Either party had the right to have a written contract executed about the building of this spur track, and the railroad company demanded such a contract before it would build the spur. The written agreements, to be executed in duplicate, were in due course sent to the appellee. They are quite long, and it is unnecessary to set out the contents in full. Among other provisions, paragraphs 8 and 10 provide as follows:

"The shipper agrees to do the grading and furnish all cross and switch ties, and material necessary for road crossing, and to pay the railroad company in cash the sum of seven hundred and twelve dollars and thirty-one cents."

"It is understood and acknowledged that the work to be done, material to be furnished and the money to be paid by the shipper as herein above provided, includes the entire estimated expense of constructing the track; and if the actual cost of the work to be done and material furnished by the railroad company shall exceed the amount to be deposited in cash by the shipper as above provided, the shipper shall pay the railroad company such excess, but if such cost to the railroad company shall be less than the amount of said cash deposit, the railroad company shall refund the difference to the shipper."

These agreements contained 11 different conditions, setting out in the greatest detail the responsibilities and the liabilities of each party of the contract. Certain provisions were objectionable to Mr. Jones, and he erased them from the duplicate agreements, then executed and returned these agreements to the railroad company, setting forth in a letter written to them his objections thereto. This letter was lost and not introduced in evidence, but appellee testified to its contents as herein

stated.   He also inclosed his check in payment of the estimated cost of building the spur track.   This check was cashed by the railroad company.

It is claimed by the appellee that the cashing of this check and the retention of these altered contracts by the railroad company was a ratification of and an acquiescence by the defendant in the contract as modified.   It is to be noted, however, right here, that the agreements were drawn by the agents of the railroad company, and submitted to the appellee for his approval.   He rejected them in their unaltered form, erased the objectionable features, and signed a modified contract, which he in turn sent to railroad company, for its approval or rejection along with the check.   Since the railroad company drew the contracts, it was the proper thing for the appellee to return these contracts, regardless of whether or not he signed or rejected them; for the reason that they were the property of the railroad company.   It was not incumbent upon the railroad company, when it declined to sign these contracts, to return them to Jones, because they belonged to them and not to Jones, or rather the paper upon which the lifeless contracts were written belonged to the railroad company.   The appellee Jones was in no way mislead by the action of the defendant company in retaining these contracts and cashing his check. On the other hand, the correspondence clearly shows that, within about three weeks after Mr. Jones returned the altered contracts, the superintendent wrote him that a revised contract, which he hoped would meet appellee's approval, had been drafted and would reach him within a few days. The testimony here shows, though not shown by the correspondence, that this revised contract, as a matter of fact, was sent to the appellee in the care of the agent and was examined by him, and, as shown by the letter of the appellee dated June 29th, since the appellee did not see wherein these contracts were materially different from the original contract, he failed to execute them. The testimony shows that he ''threw

them away." Without going into further details as to the balance of the correspondence between the parties, suffice it to say that it merely shows that they were unable to agree upon the terms of the written agreement. This correspondence clearly establishes the fact that the appellee, Jones, recognized that before this spur track could be built it would be necessary for him to enter into this agreement with the defendant. There was never any agreement, either oral or written, as to the terms and conditions of the building of this spur track, entered into between these parties. The railroad company in due course informed Mr. Jones, after he returned to them the first contract as modified by him, that they were attempting to draw another contract to meet his objections. This contract they drew, and Mr. Jones a second time rejected the contract offered him by the defendant. Instead of returning this contract, however, it seems that he threw it away, and there was some delay or misunderstanding caused thereby.

The suit is based upon the alleged written contract modified and signed by Mr. Jones. The railroad company neither executed nor ratified this contract, nor is it estopped by its conduct from repudiating it. The appellee was in no way misled by the conduct of the railroad company. On the other hand, it was well understood by the appellee, as is shown by the testimony and by the correspondence, that he knew and understood that the railroad company had not agreed to his modifications of the contract. The mere fact that the railroad company cashed the check and kept the money for a little over a year would not cause it to be bound by this altered contract. This was merely the estimated cost of the spur track, to be paid by appellee, and the record in the case shows that the railroad expected all the time to enter into some written contract with appellee to build the spur, and there was no necessity to return the money until after the negotiations were finally severed. The last letter in the record is one written to appellee by the

superintendent of the railroad company, in which letter the superintendent was still trying to perfect an agreement with appellee. The appellee is entitled to his money, with lawful interest, from the date his check was cashed. This amount was tendered him in the lower court. In the absence of an estoppel—and there was none in this case—it is hornbook law that, before a contract has been entered into, the minds of the contracting parties must meet as to all of its terms and conditions. In the language of Justice Cox, in the case of *Insurance Co. v. McIntosh*, 86 Miss. 236, 38 So. 775, a case in point here:

"Thus, it is perfectly evident that the minds of the parties never met, and that no contract for insurance was ever effected."

In the present case no contract for the building of the spur track was ever effected between the parties.

Reversed, and judgment here for appellee for seven hundred and twelve dollars and thirty-one cents, plus six per cent interest from the date the check was cashed to the date of tender in the circuit court. Appellee is taxed with the costs of this appeal.

HOLDEN and ETHRIDGE, JJ., dissenting.