## F. O. EVANS PIANO CO. *v.* TULLY.

[76 South. 833, In Banc.]

SALES. *Sales on trial. Failure to return. Acceptance.*

Under a contract for sale of a piano on trial which provided that the buyer accepted the seller's offer to try one of its pianos, that without obligation on his part to purchase, the seller might ship the piano ordered below; that after testing the instrument for thirty days, if the buyer decided to keep it, he would pay for it as stated below, and would sign the selling contract and that if he decided not to keep it, he would return it to the freight depot subject to the seller's order, the buyer was under duty either to accept the piano or return it to the depot of a common carrier at the end of the 30 days' trial, and where the buyer made no effort whatever to return the piano, and did not respond to the seller's numerous letters for several months, he must be treated in law as having accepted the piano and was liable for the price.

APPEAL from the circuit court of Jones county.

HON. P. B. JOHNSON, Judge.

Suit by the F. O. Evans Piano Company against A. J. Tully. From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinon of the court.

*Welch & Street,* for appellant.

Whether the time of the offer for the return of the piano be fixed on August the 14th, the date of the letter of Mrs. Tully, asking for shipping instructions, or September the 14th, 1914, the date of the. letter of Tully himself asking for shipping instructions, or the somewhat indefinite date prior thereto fixed by the appellee in his testimony at not more than four months before that time be established as the date of offering to return the piano, was not that such an unreasonable time that the plaintiff was warranted in believing that the appellee had elected to keep the piano? If he could keep the piano four or five months after the expiration of the thirty day period, why couldn't he keep it for a year for the purpose of testing it, and then for two years and then for three years? In the case of *Morse* v. *Bellows,* 7 New Hampshire, 549, 28 American Decision 372, the court said: "A proposition, to become binding on the making it, must be accepted within a reasonable time; but what constitutes a reasonable time, when no time is specified, is a question of law, and depends on the subject-matter and the situation of the parties." And to the same effect is a decision of the court in the case of *Hill* v. *Hobart,* · 16 Maine 164, where the court said that where the facts are clearly established, or undisputed, or admitted the reasonable time is a question of law. And in defining a reasonable time, the court said in the case of *Scannell* v. *Am. Soda Fountain Co.,* 161 Mo. 606, 61 So. 889, "that is a reasonable time that preserves to each party the rights and advantages he possesses, and protects each party from losses that he ought not to suffer."

In the case of *Hargadine-McKittrick Dry Goods Co.* v. *Renolds,* 64 Fed. 506, it was held as a matter of law that a delay of six days in answering an *ultimatum* as to the price of goods was unreasonable. See, also, the case of *Moxly* v. *Moxly,* 59 Ky. 309, in which it was held that if no definite time is stated the inquiry as to what is a reasonable time within which a proposition must be accepted is as to what time it is rational to suppose that

the parties contemplated; that the law will decide this to be that time which, as rational men, they ought to have understood each other to have in mind.

The case of *McFadden* v. *Henderson, et al.*, 128 Ala. 221, 29 So. 640, is an interesting case holding that a question of time or construction of a contract where the facts are undisputed is a question for the jury. See also the cases of *Felnorth* v. *Foley*, 98 Ala. 176, 13 So. 485, and *Branhill* v. *Howard*, 104 Ala. 412, 15 So. 1, to the same effect.

But why should the court make a contract for the parties they did not make for themselves. Any effort on the part of a court to make contracts for the parties by reading into the contract something not there has always lead to endless confusion and dissatisfaction.

The parties are all of age, there is no suggestion of improper influence, undue influence or unfair methods. The parties entered into a solemn contract in writing. Why should the court read into the contract something the parties to it did not write into it? How can the court say that though given thirty days in which to return the piano, the defendant shall have in addition to thirty days a further reasonable time. Tully seems to be able to take care of himself. Why didn't he write into the contract that he was to have a reasonable time, or four months' time after the expiration of thirty days to return the piano? By the way, he contracted to return to freight depot not to write letters offering to return.

But if we are incorrect in our contention that the appellee had only thirty days in which to return the piano if he elected not to take it, and the court was correct in ruling that he had a reasonable time thereafter in which to return it, then we respectfully insist that what was a reasonable time was for the court to say as a matter of law and not a question for the jury. And in support of this contention we respectfully urge the court to read the case of *Aymar* v. *Beers*, 17 Am. Decision, 538, and the very interesting and instructive note thereon by Judge

FREEMAN, but if we are incorrect as to this and this was a proper question for a jury, then we do most earnestly insist that it was a question that should have been submitted only on competent testimony and the testimony of the appellee as to what he had written to appellant was certainly incompetent, yet this testimony no doubt influenced the jury to bring in a verdict for the defendant. We think the letter written by appellee's wife was competent. The appellee had notice of the letter and its contents by the reply addressed to appellee and coming into his possession. Failing to repudiate the agency then, he should not be permitted to do so now.

We confidently ask for a reversal of the case and for judgment here.

*Deavours & Hilbourn,* for appellee.

The burden of appellant's complaint is that appellee did not ask for shipping instructions soon enough after the piano was delivered to him; that he did not return the piano in time. We submit that if the contract sued on was an executory contract of sale, which it is not, even then he would be under no obligation to actually return the piano.

"It is not neccessary that the buyer, in an executory contract depending for validity upon acceptance after examination, should actually return, or offer to return the goods, especially when the distance is great, and the freight charges large." *Strauss* v. *National Parlor Furniture Company,* 76 Miss. 342, 24 So. 703, and the authorities there cited.

Was the right result reached in the court below? As we understand it, this is the only question about which this court is concerned; that the court will not reverse this case on account of the admission or exclusion of evidence, or on account of instructions given, if taking the record as a whole, the correct result was reached. Appellant bases its suit on the contract sued on; on this it must stand

or fall. We submit that an examination of the contract, and of the correspondence between the parties after the execution of the contract, will show that neither party considered this a sale or contract for sale; the company repeatedly asking Tully to sign the contract. Tully declining to do anything except to return the piano to the depot in accordance with the contract.

We therefore submit that the judgment of the lower court is eminently correct, wholesome and proper and that it ought to be affirmed by this court.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, a piano dealer of Chicago, Ill., placed a piano with Tully, at Laurel, Miss., under a contract signed by Tully, which is substantially as follows:

"I accept your offer to try one of your Evans Artist Model pianos. Without any obligation on my part to purchase, you may ship the piano ordered below. After testing the instrument for thirty days, if I decide to keep it, I will pay for it as stated below, and will sign your selling contract which is a part hereof. If I decide not to keep it, I will return the piano to the freight depot, subject to your order."

Then follows a description of the piano and the terms of sale, in which it was agreed to pay for the piano in monthly installments. The piano was shipped to Tully on this order. On December 31, Tully wrote that the music rolls had been received, but that the piano had not arrived, although he had phoned all the freight offices. On January 8, 1913, Tully wrote to the piano company that the piano had arrived that day in bad condition, there being some marks on the keys, and the player out of commission; that it seemed to have been roughly handled in transit. He also returned the freight bills and requested check to cover same, also requesting the piano company to have its agent call and look over the piano. On January 13th the piano company wrote Tully, acknowledging receipt of his letter of the 8th, and inclosing check for the freight bills, but returned the freight bills and asked that Tully

have the agent mark on the freight bills that the piano was received in bad condition, so that damages could be collected from the carrier, and directed Tully to have the piano returned, if it could not be satisfactorily fixed, and another would be sent. It was also suggested that he get a piano tuner to look over the piano and see if it could be put in proper condition, and to send the bill to the piano company for payment. To this letter the appellee did not reply. On February 28th the piano company again wrote Tully, asking him to have the piano fixed, and to have the freight bills marked by the agent so they could collect damages from the company. There was no reply to this letter, and on March 11th the piano company again wrote Tully along the same lines. No reply was made to this letter, and on March 19th the piano company wrote another letter along the same lines. On March 27th the company wrote another letter, to which no reply was received, and again on April 4th, 10th, 18th, and May 6th. May 10th, Mrs. Tully, wife of appellee, wrote the piano company, stating that they had been away from home for some time, and that the piano was in good hands while they were away, stating, also, that when the piano was received the player mechanism had dropped about one and a half inches, and was resting on the keys or hammers, and that they had a tuner fix the same, who only had to straighten the bolts that supported the player, and which had been bent, for which there was no charge; that the piano needed tuning, but was otherwise all right, and stating that every on who saw the piano thought it was a beautiful instrument. On May 20th appellant replied to this letter and requested a signature to the contract and a remittance, but no answer was received to this letter. On June 29th appellant again wrote Tully, and again on August 12th. On August 14th Mrs. Tully wrote in reply to the letter of the 12th that she did not think the piano was what they wanted. On August 18th appellant replied to this letter, calling attention to its numerous letters in which appellee had been urged to either return the piano or sign the contract, and to have the freight bill marked by the agent, and

stating that they could not take back the piano under the circumstances. Appellee testifies, and also Evans of the piano company. Appellee contended in his testimony that the piano was not in good condition, and was not up to representations, etc. At the conclusion of the evidence, plaintiff requested a peremptory instruction, which was refused by the court. Appellant also requested an instruction that the defendant was under obligation to return the piano within a reasonable time after the thirty-day trial period, to some common carrier or railroad for reshipment, and if the jury believed the defendant did not, within a reasonable time, return the piano, their verdict must be for the plaintiff, which was also refused.

We think that, under the contract, the appellee, defendant below, was under the duty to either accept the piano or return it to the depot of a common carrier at the end of a thirty-day trial period, and as the proof shows there was no effort whatever to return the piano, and that the defendant below did not respond to the numerous letters of the plaintiff between January 13th and May 8th, he must be treated in law as having accepted the piano. The peremptory instruction for the appellant should therefore have been given. The judgment of the court below is accordingly reversed, and judgment will be entered here for the appellant.

*Reversed, and judgment here.*

Stevens, J. (dissenting). A reversal of this case is based upon the claimed right of the piano company to a peremptory instruction. This expression of my views will be directed solely to this point. As I construe the one and only contract executed by Mr. Tully, it is an agreement merely to permit the Evans Piano Company to place one of their musical instruments in Tully's home to be tried or tested without any obligation whatever on the part of Mr. Tully to buy. This is the express language of the contract itself. It says:

"I accept your offer to try one of your Evans Artist Model pianos. Without any obligation on my part to purchase, you may ship the piano ordered below."

The primary condition upon which Mr. Tully permitted the piano to be installed in his home was stated in the language, "without any obligation on my part to purchase." There is another significant statement in this contract, and that is when appellee had tested the instrument and had decided to keep it he would then for the first time execute a contract of purchase. The language is, "if I decide to keep it, I will pay for it as stated below, and will sign your selling contract, which is a part hereof." If he decides to keep it he will then "sign your selling contract." This so-called "selling contract" does not seem to be incorporated in the record, and I do not know what its proposed terms and provisions are. It was evidently a blank form to be filled out later with the privilege to pay for the piano on the installment plan. It may also have made provision whereby the vendor retained title as security. The contract then which Tully signed was not a contract of purchase. The court now makes him take the piano, and compels him to assume the attitude of purchaser simply because Tully did not return the piano to the depot within such time as the court thinks reasonable. The question of what was or was not a reasonable time was submitted to the jury under instructions from the court, and the jury by their verdict has found that Tully did not keep the piano an unreasonable length of time. There is indeed room to suspect that Mr. Tully did not act in the utmost good faith, or at least did not act diligently, but his testimony explains this. He says that when the piano arrived "it was in bad condition. It was badly torn up and broken in transit, and badly out of tune, too." He furthermore testifies that "it was not as represented. It was of very poor grade." This testimony on the part of the appellee is uncontradicted. It was offered to ex-

plain the necessity for having the piano repaired before a fair test could be made. Mr. Tully furthermore testifies that he notified the house of his dissatisfaction, and ''asked twice for shipping instructions on it;'' that they never gave any shipping instructions, but insisted upon his signing the contract of purchase, the very contract which the preliminary agreement contemplated. It is significant also that the tentative agreement nowhere states the terms of the trade, but leaves blank spaces unfilled. The purchaser had the right to pay cash within thirty days, and receive one kind of discount, or to pay cash in sixty days, and receive another and different discount, or the option to pay at ten dollars cash after thirty days and the balance at the rate of ten dollars a month. The declaration here sues for the entire price, and it is nowhere intimated that Tully agreed to pay cash for the piano. There is, then, not only an absence of an agreement to buy at all, but especially an absence of any agreement to pay cash. As I see it, there is an absence of mutuality. It is shown that appellant had an agent in this territory, and that appellee requested that the agent call. Instead of the agent calling to see about the damage to the piano, and having the instrument tuned, the piano house was writing letters to Mr. Tully asking him to have this done, and at the same time asking that he sign the contract. The piano company at no time requested Tully to reship the piano, and at no time gave shipping instructions. They do not seem to have been interested in having the piano reshipped, but at all times were demanding an execution of the written contract of purchase. The contract which the correspondence asked Tully to sign gave him benefit of the monthly payment plan. This is sufficient to show that there was no definite agreement as to terms. The agreement, then, was simply an agreement to agree; an agreement to experiment with, to try or test. This being so, when Tully declined to execute any contract

after the expiration of the thirty-day period for trial, he should not be compelled to pay for the piano, and cannot be compelled to do so except upon the doctrine of estoppel. Of course, if Tully had, after the thirty days, signified an acceptance, or had, as in some cases of this kind, attempted to sell the property as his own, an acceptance would be conclusively presumed and the purchaser would be liable. But there is no showing that Tully exercised actual ownership over the property inconsistent with his expressions of dissatisfaction. There is no evidence whatever that he even used the piano after he decided it was not up to representations and what he wanted. He swears that he not only wrote letters to the house offering to return and asking for shipping instructions, but he also offered to return the piano to appellant's attorney, Mr. Welch, and he kept up this offer on the trial of the case. Mr. Elliott, in discussing the effect of the intention of the parties to reduce the contract to writing says:

"That if all the terms of the agreement have not been settled, and it is understood these unsettled terms are to be determined by the formal contract, there is no binding obligation until the writing is executed;" that the intention of the parties to enter into "a formal written agreement is strong evidence that the negotiations prior to the drawing up of such writing are merely preliminary, and not understood or intended to be binding." Elliott on Contracts, par. 63.

This is the case here. I think also it should be remembered that this case does not present a purchase of farming implements or machinery to be utilized in business. It is also not a case where a merchant is buying articles of merchandise, on receipt of which the purchaser can readily determine whether he wills to accept or reject. This is the purchase of a "player piano," a musical instrument, the mechanism of which the average individual knows practically nothing. It is not uncom-

mon practice for the agents of piano houses by much importunity to induce householders to let them place their pianos in the home in order to excite the interest of prospective purchasers.   On January 8, 1913, as soon as the piano arrived, Mr. Tully in writing the company stated that the player was "out of commission altogether," and further stating, "if your agent, Mr. Hardy, is in the vicinity, I would be glad if he would call and look at the piano himself."   But Hardy, it seems, had accomplished his purpose to get the piano in Tully's home, and he was not interested in getting it out.   The opinion of the court forces Tully to buy a piano and piano player against his will.

The court gave the plaintiff the following instruction:

"For the plaintiff the court instructs the jury that defendant was under obligation to return the piano within a reasonable time after the thirty-day trial to some common carrier or railroad for reshipment, and if you believe the defendant did not within a reasonable time return or offer to return the piano, your verdict must be for the plaintiff."

This left the issue of "reasonable time" to the jury, and the verdict of the jury on this issue is against appellant.

The views I have find support in the following cases: *Y. & M. V. R. R. Co.* v. *Jones,* 75 So. 550; *Walter A. Wood Mowing & Reaping Mch. Co.* v. *Calvert,* 89 Wis. 640, 62 N. W. 532; *Cooke* v. *Underhill Mfg. Co.,* 138 N. Y. 610, 33 N. E. 728.